# DECLARATION

I, Christopher D'Amico, a Special Agent with the United States Secret Service (USSS), hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I have been a USSS Special Agent and sworn Federal law enforcement officer since 2020. I have received specialized training and experience in the investigation of financial crimes, including mail fraud, wire fraud, securities fraud, bank fraud, and money laundering, as well as other violations of federal law. In February 2021, I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Program, which incorporated legal, investigative, and law enforcement instruction. In August 2021, I completed the Special Agent Training Course at the James J. Rowley Training Center in Laurel, Maryland. In the Special Agent Training Course, I completed the Basic Investigations of Computer and Electronic Crimes Program. Prior to joining the USSS, I served for four years as a Logistics Officer in the United States Army. In May 2016, I completed an undergraduate degree in Criminal Justice from King's College in Wilkes-Barre, Pennsylvania.

2. This Declaration is in support of a Verified Complaint of Forfeiture of the following:

   a. $909,708.64 in U.S. Currency seized from a subledger at Citibank, N.A., previously held in an account ending in 7108, in the name of NTGH 2A



GOVERNMENT EXHIBIT A

Auto Trade, INC, LLC (the account ending in 7108 is hereinafter referred to as the "NTGH Account"); and

b. $69,003.39 in U.S. Currency seized from a suspense account at JP Morgan Chase, N.A., previously held in an account ending in 0913, in the name of SIGLO Export Import 22 Corp. (the account ending in 0913 is hereinafter referred to as the "SIGLO Account").

3. The facts and information contained in this Declaration are based on both my personal knowledge and experience, and law enforcement officers who participated in the investigation described below. This Declaration does not set forth all facts known to me or other law enforcement officers concerning the investigation.

4. Based on the facts set forth below, there is probable cause to believe the $909,708.64 in U.S. Currency and the $69,003.39 in U.S. Currency are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as properties involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or properties traceable to such properties, and pursuant to 18 U.S.C. § 981(a)(1)(C), as properties which constitute or are derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined by 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense, namely wire fraud in violation of 18 U.S.C. § 1343.

**The Wire Fraud Scheme**

5. In August and September 2022, within the Middle District of North Carolina and elsewhere, an unidentified individual committed wire fraud and money laundering, in

2

violation of 18 U.S.C. §§ 1343 and 1956(a)(1), to defraud a company (hereinafter "Victim Company") out of approximately $5,142,586.93.

6. An employee of Victim Company, with authority to conduct financial transactions on behalf of Victim Company, fell victim to a business email compromise scheme — a scheme wherein a criminal accesses the email account of a person without authorization and then sends unauthorized email communications to another person to cause unauthorized detrimental financial transactions.

7. Victim Company is a food distribution business located in Mount Vernon, New York. Victim Company has an account at HSBC Bank, and when Victim Company conducts financial transactions, Victim Company regularly transfers and receives funds via wire deposit through its account at HSBC Bank.

8. On or about August 19, 2022, a representative of Victim Company received an email from a food supplier located outside the United States (hereinafter the "Supplier") updating bank information for future payments to the Supplier. The email directed Victim Company to wire payments to the Supplier to a Wells Fargo Bank account ending in 3001 (hereinafter "Wells Fargo x3001").

9. In August and September 2022, Victim Company representatives made nine wire payments totaling $5,142,586.93 from Victim Company's account at HSBC Bank to Wells Fargo x3001, believing that Wells Fargo x3001 was an account held by the Supplier.

10. Wells Fargo x3001 in fact belonged to an individual, Timothy Koob (hereinafter "Koob"), who resides within the Middle District of North Carolina.

11. In August and September 2022, Koob conducted a series of outbound wire transfers involving the funds fraudulently obtained from Victim Company. In total, Koob wired approximately $3,885,500.00 from Wells Fargo x3001 to several other bank accounts.

12. In September 2022, Koob sent a series of wire transfers totaling $1,695,000.00 from Wells Fargo x3001 to the NTGH Account. Of the total wires sent to the NTGH Account, $909,708.64 was transferred to a bank subledger in the custody of Citibank, N.A., and, as discussed below, subsequently seized by USSS, and $400.00 remains in the NTGH Account.

13. In September 2022, Koob sent a wire transfer in the amount of $540,000.00 from Wells Fargo x3001 to the SIGLO Account. Of the funds sent to the SIGLO Account, $69,003.39 was transferred to a suspense account and in the custody of JPMorgan Chase Bank, N.A., and, as discussed below, subsequently seized by USSS.

14. The chart below summarizes the movement of funds from Victim Company to the NTGH Account and the SIGLO Account:



15. On or about September 19, 2022, a Victim Company representative discovered the payments made after receipt of the email directing payments to Wells Fargo x3001 had never been received by the Supplier. Victim Company representatives reviewed their email and confirmed that the sender/receiver information on the August 19, 2022 email received from their purported "Supplier" was fictitious.

16. On or about September 19, 2022, a Victim Company representative contacted HSBC Bank and advised the bank representative about the wire transfers, and requested that its most recent wire transfer be stopped. The wire, however, had already left Victim Company's account at HSBC Bank.

17. On or about September 20, 2022, HSBC Bank contacted Wells Fargo Bank and provided information about the fraudulent wire transfers to Wells Fargo x3001.

18. USSS subsequently opened an investigation and determined that the wire fraud scheme involved a money mule, identified as Koob.

**Money Mules Generally**

19. Based on my training and experience, I know that a "money mule" is a person whose bank account(s) acts as a conduit between a victim of a financial fraud scheme, which is generally committed via the Internet, and the criminal(s) who perpetrates the fraud scheme and receives the funds that originated from the victim. In my experience and in discussion with other law enforcement officers who investigate fraud schemes committed via the Internet, "money mules" are often persons sixty years or older; persons who develop a romantic relationship with someone they never meet in person but consider a "boyfriend" or "girlfriend"; unemployed persons who gain "employment" by simply conducting financial

5

transactions on behalf of a purported "employer" who recruits the money mule; and/or persons who believe or purport to believe that they are being recruited to transact money from a legitimate source, such as an inheritance or business deal. However, in actuality, fraudsters and money launderers, often located outside of the United States, use the Internet to exploit human emotion and, particularly, to exploit individuals who seek out online relationships, and then use those individuals and the individuals' accounts to create the aforementioned conduits to move money obtained by fraud from the victims' accounts through the money mules and to accounts controlled by the fraudsters.

### USSS Interview of the Money Mule

20. On or about February 28, 2023, the USSS Charlotte Field Office interviewed Koob. Koob admitted to receiving funds from Victim Company as well as transferring the funds to multiple other bank accounts to include the NTGH Account and the SIGLO Account.

21. Koob reported that he previously received a phone call and email from a subject who identified himself as "David Lockstone." Koob and Lockstone never met in person, and only communicated via email, text messages, and phone calls. Koob stated that Lockstone threatened to harm his family in order to coerce him to conduct the financial transactions.

22. Koob was instructed to use his existing Wells Fargo account (Wells Fargo x3001) to conduct the financial transfers. Wells Fargo x3001 was established by Koob in or around September of 2020.

23. Koob was successful at completing multiple wire transactions, transferring the funds received from the Victim Company bank account to other bank accounts. Koob confirmed that he sent wire transfers from Wells Fargo x3001 to the NTGH Account and the

SIGLO Account throughout September 2022. Koob was notified by Wells Fargo Bank on October 5, 2022, that his accounts at Wells Fargo were scheduled to be closed due to fraudulent activity.

24. Koob stated that he knew that the funds received from Victim Company, and subsequently transferred to the NTGH Account and the SIGLO Account, were not intended for him and that the person directing the transfers was involved in something illegal.

### Seizure of the U.S. Currency

25. On March 17, 2023, USSS, pursuant to a seizure warrant issued by Magistrate Judge Joe L. Webster [1:23MJ133], seized the $909,708.64 in U.S. Currency previously held in the NTGH Account. Citibank, N.A., converted the funds into a check that it provided to USSS, which deposited the check into its Customs Suspense Account.

26. On March 17, 2023, USSS, pursuant to a seizure warrant issued by Magistrate Judge Joe L. Webster [1:23MJ134], seized the $69,003.39 in U.S. Currency previously held in the SIGLO Account. JP Morgan Chase Bank, N.A., converted the funds into a check that it provided to USSS, which deposited the check into its Customs Suspense Account.

### Conclusion

27. Based on the foregoing, there is probable cause to believe that $909,708.64 in U.S. Currency seized from a subledger at Citibank, N.A., previously held in account ending in 7108, in the name of NTGH 2A Auto Trade, INC, LLC, and $69,003.39 in U.S. Currency seized from a suspense account at JP Morgan Chase Bank, N.A., previously held in account ending in 0913, in the name of SIGLO Export Import 22 Corp., are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as properties involved in a transaction or attempted

transaction in violation of 18 U.S.C. § 1956, or properties traceable to such properties, and pursuant to 18 U.S.C. § 981(a)(1)(C), as properties which constitute or are derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined by 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense, namely wire fraud in violation of 18 U.S.C. § 1343.

This the _7_ day of July, 2023.

_____
Christopher D'Amico
Special Agent
United States Secret Service

_____