IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV559 |
| | ) | |
| $909,708.64 IN U.S. CURRENCY, | ) | |
| SEIZED FROM A SUBLEDGER AT | ) | |
| CITIBANK, N.A., PREVIOUSLY HELD | ) | |
| IN ACCOUNT ENDING IN 7108, IN | ) | |
| THE NAME OF NTGH 2A AUTO TRADE | ) | |
| INC., LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This forfeiture action is before the court on Plaintiff United States of America's motion for summary judgment. (Doc. 65.) The motion is opposed by NTGH 2A Auto Trade, Inc. ("NTGH"), a claimant to the defendant currency. The motion has been fully briefed and is ready for resolution. (Docs. 66, 69, 71.) For the reasons stated below, the motion will be granted.

I. BACKGROUND

The United States seeks civil forfeiture of the defendant $909,708.64 in U.S. currency, which was seized from a subledger at CitiBank, N.A. The defendant funds were previously located in an account at CitiBank held by NTGH (the "NTGH Account"). Viewed in the light most favorable to NTGH as the non-movant, the relevant

facts are as follows: In September of 2022, an individual named Timothy Koob sent a series of wire transfers totaling $1,695,000 in funds fraudulently obtained from J.G. Beef Sales Inc. ("J.G. Beef")[1] out of his personal Wells Fargo account and into the NTGH Account. (Doc. 1-1 ¶¶ 10-12; Doc. 7.) Of the total amount wired into the NTGH account, $909,708 was transferred to a ledger in the custody of Citibank, N.A., and subsequently seized by the United States Secret Service pursuant to a warrant on March 17, 2023. (Doc. 1-1 ¶¶ 12, 25.) On July 7, 2023, the United States filed this action seeking forfeiture. (Doc. 1.) The United States alleges, and NTGH does not dispute, that the defendant currency constitutes or was derived from the proceeds of a criminal wire-fraud scheme. (Id. ¶ 1; Doc. 69 at 2-3.)

## II. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Basnight v. Diamond Devs., Inc., 146 F. Supp.

---

[1] There is no dispute that fraudsters intercepted emails from J.G. Beef, redirecting payment to themselves for beef ordered by J.G. Beef from a third party. Fraudsters used Koob and his bank account as the conduit for transferring the fraudulently-obtained funds.

2

2d 754, 760 (M.D.N.C. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In determining a motion for summary judgment, the court views the "evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences." Id. Summary judgment should be denied "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." Guessford v. Pa. Nat'l Mut. Cas. Ins. Co., 983 F. Supp. 2d 652, 659 (M.D.N.C. 2013) (quoting Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994)).

While the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, once that has been met, the non-moving party bears the burden of showing that such an issue does exist. Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). A mere scintilla of evidence is insufficient to circumvent summary judgment. Anderson, 477 U.S. at 252; Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) ("[T]he nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (noting that there is an affirmative duty for

3

"the trial judge to prevent factually unsupported claims and defenses from proceeding to trial" (internal quotation marks omitted)). Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. Anderson, 477 U.S. at 248-49. Trial is unnecessary only if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).

    **B.    Motion for Summary Judgment**

The United States contends that the defendant currency is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as property involved in actual or attempted money laundering transactions in violation of 18 U.S.C. § 1956, or property traceable to such property, and under 18 U.S.C. § 981(a)(1)(C) as property constituting or derived from the proceeds of "specialized unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), namely wire fraud in violation of 18 U.S.C. § 1343. (Doc. 66 at 2-3.) NTGH does not dispute the United States's account of the wire fraud scheme. (Doc. 69 at 2-3.) Instead, NTGH argues that it is an "innocent owner" of the defendant currency. (Doc. 69 at 7-13.) The United States replies that NTGH's argument that it is an "innocent owner" is factually and legally erroneous, and moreover that the evidence

4

NTGH offers in support of its argument is inadmissible.[2] (Doc. 71 at 1-7.)

To establish an existing interest as an innocent owner under 18 U.S.C. § 983, a claimant must show by a preponderance of the evidence that he is "an owner who (i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. 983(d)(2)(A). The United States argues that NTGH cannot meet this burden because it cannot show that it has an ownership interest in the defendant currency. (Doc. 66 at 13.) NTGH responds that it has an ownership interest in the defendant currency because it had a balance of $36,111.58 in its account prior to the receipt of fraud proceeds (Doc. 69 at 8), because it was acting as a bailee of what it believed to be legitimate funds on behalf of a group of African businessmen (id. at 8-13), and because it was owed a 5-10% fee for facilitating the businessmen's transaction (id. at 8).

Even assuming that the supporting evidence NTGH offers is admissible and these facts are true, NTGH has not met its burden to show an ownership interest in the defendant currency by a

---

[2] As the United States notes, the contested evidence is immaterial to the disposition of the present motion. (Doc. 71 at 4.) Thus, the court need not reach the question of its admissibility.

5

preponderance of the evidence. NTGH has already conceded that $1,695,000 in fraud proceeds were wired into its account in September of 2022. (See Doc 69 at 3 ("Plaintiff's recitation of facts as to the alleged "wire fraud" scheme are uncontroverted and largely irrelevant to the question before the Court.").) This fact, which NTGH dismisses as "largely irrelevant," establishes dispositively that NTGH was not the owner of the defendant currency. Id. Section 983(d) defines "owner" as "a person with an ownership interest in the specific property sought to be forfeited[.]" 18 U.S.C. § 983(d). Here, the specific property subject to forfeiture is the $1,695,000 in fraud proceeds that were wired into the NTGH account. NTGH cannot simultaneously concede that the defendant currency was fraudulently stolen from J.G. Beef and claim to be its rightful owner.[3]

Further, as the United States notes, the law does not

---

[3] NTGH relies on the statutory definition of "owner," which it argues "does not include – a bailee **unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized**," citing 18 USC § 983(d)(6). (Doc. 69 at 8-9 (emphasis in original).) NTGH names several African businessmen as the "identified bailors," although that evidence is disputed, and cites various New York and North Carolina state law cases to argue that it fits the state-law definition of a bailee. (See id. at 9-12.) But this is all beside the point, because NTGH has admitted that the proceeds were a result of fraud, and thus neither the alleged bailors nor NTGH can have a colorable legitimate interest in the property seized. Moreover, even the deposition of Ayoubu Hassimoou Adam, the owner of NTGH, reveals that the NTGH's alleged legitimate clients "work with some people who work with Koob, and Koob deposited the money into the [Citibank] account." (Doc. 69-3 at 11, 28, 45.) Apparently, NTGH is relying on the fact that it obtained an affidavit from Koob stating that the funds were not the result of criminal activity (Doc. 69-8); but of course this is false, as NTGH now concedes.

6

distinguish between the fraud proceeds wired into the NTGH Account and other funds located in the same account.  (Doc 71 at 3 (citing <u>United States v. All Funds Presently on Deposit or Attempted to be Deposited in any Accts. Maintained at Am. Exp. Bank</u>, 832 F. Supp. 542, 556-64 (E.D.N.Y. 1993)).)  Section 984 of the forfeiture statute provides:

> (a)(1) In any forfeiture action in rem in which the subject property is . . . funds deposited in an account in a financial institution . . .
>
>> (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>>
>> (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.
>
> (b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

18 U.S.C. § 984.  Here the United States brought this action on July 7, 2023, within the one year allotted under § 984(b).  (Doc. 1.)  Thus, up to $1,695,000 of the currency seized from the NTGH account is subject to forfeiture, regardless of whether it can be traced directly to the original fraud proceeds.  Because only $909,708.64 remained in the account at the time of seizure, the

7

entire amount is subject to forfeiture.  The United States does not need to distinguish the forfeited currency from the $36,111.58 in identical currency held in the account prior to the receipt of fraud proceeds, nor from any other identical currency in which NTGH claims an interest.

In sum, the undisputed material facts show that the defendant $909,708.64 constitutes or is derived from fraud proceeds and is thus subject to forfeiture as a matter of law.

### III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Plaintiff United States of America's motion for summary judgment (Doc. 65) is GRANTED and the claim of NTGH 2A Auto Trade Inc. (Doc. 22) is DENIED.

IT IS FURTHER ORDERED AND DECREED that the defendant $909,708.64, seized from the subledger at Citibank, N.A., previously held in account ending in 7108 in the name of NTGH 2A Auto Trade, Inc, LLC, is FORFEITED to the United States.

                                                  /s/   Thomas D. Schroeder
                                            United States District Judge

January 12, 2026

8

Case 1:23-cv-00559-TDS-JLW   Document 76   Filed 01/12/26   Page 8 of 8